UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN N. HARAMALIS, Colonel, United States Army,<br><br>Plaintiff,<br><br>v.<br><br>DAVID S. BALDWIN, individually and in his official capacity as MAJOR GENERAL, CALIFORNIA NATIONAL GUARD; CALIFORNIA MILITARY DEPARTMENT; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:17-cv-498-JAM-CKD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

This matter is back before the Court on David S. Baldwin and California Military Department's (collectively "Defendants") Motion to Dismiss John N. Haramalis's ("Plaintiff") First Amended Complaint. For the reasons set forth below, Defendants' motion is GRANTED, with leave to amend as limited in this order.[1]

///

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for October 17, 2017.

1

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The following facts are taken as true for the purposes of this motion:

Plaintiff John N. Haramalis is a Colonel in the United States Army on Federal Active Duty and assigned as the Chief J2 LNO, Joint Intelligence Directorate, National Guard Bureau, in Arlington, Virginia. First Amended Complaint ("FAC") ¶ 1. Plaintiff was affiliated with the California National Guard prior to his tour of active duty at the Pentagon. Id. Defendant Baldwin is the Adjutant General of the California National Guard, of which the California Army National Guard is a component. Id. at ¶ 3.

Back in 2016, Plaintiff sought out and accepted a position in the Arizona National Guard that would follow his tour of active duty. Id. at ¶¶ 19-22. Plaintiff began working with human resources to arrange for the conditional release from California to Arizona. Id. at ¶ 24. At first, Defendant Baldwin approved of the voluntary transfer request. Id. at 23–32. But, after much of the process had been completed, Defendant Baldwin retracted his approval and conveyed that Plaintiff would have to wait for a board to convene and approve the request. Id. at ¶¶ 23-35. This decision created a delay that resulted in Plaintiff losing the position and promotion with the Arizona National Guard. Id. at ¶ 39.

After Plaintiff filed the Complaint in this action, Defendants offered to negotiate the terms of Plaintiff's release from the California National Guard. Id. at ¶ 41. Plaintiff asserts that he became a citizen of Virginia, requiring his state

2

commission as an officer of the California National Guard to be vacated. Id. at ¶ 45. Defendants delayed action. Id. at ¶ 43. Plaintiff petitioned this Court for a writ to compel Defendants to vacate his state commission based on Plaintiff's Virginia citizenship. ECF No. 7. Defendant Baldwin then issued a memorandum directing the separation; Defendants issued a separation order separating Plaintiff from the California National Guard and directing his transfer to the USAR Individual Ready Reserve. Id. at ¶ 43.

Contending that the order was illegal in that it transferred Plaintiff to a USAR Control Group (in this case, the Individual Ready Reserve) involuntarily, Plaintiff filed a Motion for Mandamus/Injunctive relief asking the Court to compel Defendant Baldwin to revoke and reissue the order without this directive. ECF No. 20. The Court denied mandamus relief because Plaintiff failed to establish the Court had authority to issue the writ under California Code of Civil Procedure Section 1085. ECF No. 36. The Court declined to issue injunctive relief because Plaintiff failed to address and support the elements required under Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008).

While Plaintiff's motion was pending, Plaintiff filed his First Amended Complaint ("FAC"). ECF No. 24. Defendants move to dismiss the FAC and Plaintiff opposes dismissal. Mot., ECF No. 39; Opp'n, ECF No. 58. Plaintiff's concessions have narrowed the issues in dispute considerably. Plaintiff is no longer pursuing his equal protection claim or his claim for a state law writ of mandate, which this Court previously denied. See Mot. at 15;

3

Opp'n. In addition, Plaintiff did not oppose Defendants' argument to dismiss his substantive due process—stigma plus claim. See Opp'n; Rep. at 3. Therefore, the only claims remaining before the Court are Plaintiff's substantive due process claim based on occupational liberty and Plaintiff's civil rights claim under 42 U.S.C. § 1983.

## II. OPINION

### A. Judicial Notice

Defendants seek judicial notice of several filings in the Sacramento Superior Court action, Haramalis v. Baldwin et al., Case No. 34-2016-80002378. Request for Judicial Notice ("RFJN"), Exhs. A-F. Plaintiff filed objections to this request, arguing that the Court should not take notice of the contents of those filings for any purpose related to the truth of the matters stated therein. See Objections to RFJN, ECF No. 58-1. The Court may take judicial notice of court filings and other matters of public record. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Court may consider these filings to determine whether any of Plaintiff's claims are barred by res judicata. See Quinto v. JP Morgan Chase Bank, No. 11-CV-02920, 2011 WL 6002599, at *5 (N.D. Cal. Nov. 30, 2011) (taking judicial notice of prior judgment and other court records to determine whether to grant a motion to dismiss on res judicata grounds). The filings are properly subjects of judicial notice and the Court takes notice of them.

Defendants also seek judicial notice of Plaintiff's military orders. RFJN, Exh. G. Plaintiff does not oppose or dispute the accuracy of the exhibit. Records reflecting official acts of the

Executive Branch may be subject to judicial notice. <u>Graybill v. Wells Fargo Bank, N.A.</u>, 953 F. Supp. 2d 1091, 1093 n.2 (N.D. Cal. 2013). Although Defendants have not cited a case in which the Court took judicial notice of military orders, the Court finds notice appropriate because the orders are not subject to reasonable dispute and because the contents of the orders are alleged in the Complaint. <u>See</u> FAC ¶ 17 ("On April 27, 2015, the National Guard Bureau published orders . . . "); <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005) (a court may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions). The Court will take judicial notice of Exhibit I, the National Guard Bureau's orders withdrawing Plaintiff's federal recognition, as well. The order reflects an official act of the Executive Branch, is unopposed, and is not subject to reasonable dispute.

    Finally, Defendants seek notice of National Guard Regulation 635-100, dated September 8, 1978. RFJN, Exh. H. Plaintiff does not oppose. This regulation, too, reflects an official act of the Executive Branch and is not subject to reasonable dispute. The Court takes judicial notice of the regulation.

    B.   <u>Analysis</u>

    In addition to attacking the merits of Plaintiff's claims, Defendants argue that the <u>Feres</u> doctrine, sovereign immunity, militia immunity, and qualified immunity prevent Plaintiff from recovering damages from Defendants. Plaintiff seeks more than just damages; Plaintiff's prayer for relief seeks an injunction. Though the Court denied the earlier motion for mandamus/injunctive relief, Plaintiff does not appear to have

abandoned that prayer.  Given the relief sought, the Court will first evaluate the merits of Plaintiff's claims and then turn to the damages question, if necessary.[2]

        1.   <u>Res Judicata</u>

Plaintiff filed an action in Sacramento Superior Court against Defendant Baldwin and the California Military Department on June 27, 2016, seeking a writ of mandate, temporary restraining order, preliminary and permanent injunction, and consequential damages.  RFJN, Exh. A at 13.  The Complaint alleged that Defendants approved Plaintiff's interstate transfer to the Arizona National Guard, but then Defendant Baldwin revoked his approval and Plaintiff was informed his request would have to go through a General Officer Executive Personnel Council.  <u>Id.</u> at 4-8.  Plaintiff further alleged that the revocation was illegal and the delay caused by this process would result in Plaintiff losing the position and promotion opportunity with the Arizona National Guard.  <u>Id.</u> at 8-11.  Plaintiff asserted a breach of contract claim and sought both a writ of mandate and injunctive relief compelling Defendants to strike Defendant Baldwin's disapproval of the transfer.  <u>Id.</u> at 11-12.  The Sacramento Superior Court denied Plaintiff's application for a Temporary Restraining Order on July 8, 2016.  RFJN, Exh. B.  Defendants then filed a demurrer, RFJN, Exh. C, which the Superior Court

---

[2] The parties do not address whether the <u>Feres</u> doctrine bars injunctive relief in this context.  The Court's merits analysis does not imply a holding that <u>Feres</u> would not bar such relief.  <u>See</u> <u>Wilkins v. United States</u>, 279 F.3d 782 (9th Cir. 2002) (declaratory and injunctive relief not barred by the <u>Feres</u> doctrine where plaintiff challenged the constitutionality of a Navy policy that caused his early retirement).

6

granted, without leave to amend, on March 7, 2017, and on which final judgment was entered on April 10, 2017, RFJN, Exh. F.

The Superior Court found that Plaintiff's quest for review of Defendant Baldwin's actions was barred by the Feres doctrine as interpreted by both the California Third Appellate District and the Ninth Circuit. RFJN, Exh. F at 7–10. It also applied the four-factor Mindes test—a test from the Fifth Circuit used to determine whether a military action is justiciable—and held that all four factors "counsel[ed] against review[.]" Id. at 14. After concluding these precedents barred issuance of a writ, it found the doctrine precluded Plaintiff's breach of contract claim, which it otherwise found "fatally uncertain." Id. at 14–15. After sustaining the demurrer on each claim, the Superior Court denied leave to amend because Plaintiff failed "to convince that amendment would cure the defects raised by the demurrer." Id. at 16.

"Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." Ass'n of Irritated Residents v. Dept. of Conservation, 11 Cal. App. 5th 1202, 1220 (2017) (citation omitted). Defendants argue res judicata precludes Plaintiff's claims about the interstate transfer because those claims were adjudicated in the state court action, outlined above. Mot. at 14. Plaintiff contends that the state court's ruling that his claims were not justiciable under the Feres doctrine is not a finding on the merits and thus does not have res judicata effect. Opp'n at 5–6. He argues the decision was reached on "procedural or technical grounds that did not

7

resolve or depend on the claim's merits[,]" similar to dismissal based on mootness, unripeness, or lack of jurisdiction, which do not trigger res judicata. Id. (citing Ass'n of Irritated Residents, 11 Cal. App. 5th at 1220).

The Court finds that the Superior Court's dismissal of Plaintiff's claims without leave to amend constitutes a final judgment on the merits and precludes this Court's review of claims based on those allegations. Unlike the situations described in Ass'n of Irritated Residents—judgments based on laches, statute of limitations, and lack of jurisdiction are examples of judgments that are not on the merits—the Superior Court reached the substance of Plaintiff's claims. See id. ("A judgment is on the merits for purposes of res judicata if the substance of the claim is tried and determined. This may include a judgment of dismissal following a general demurrer or a dismissal motion if the disposition was plainly reached on a ground of substance.") (citations and quotation marks omitted). The Superior Court evaluated Plaintiff's allegations under Estes (finding that the California writ statute does not evidence the Legislature's intent for it to apply to the military), Mier (applying Ninth Circuit precedent to Plaintiff's facts), and Mindes (analyzing Plaintiff's allegations under the Fifth Circuit's four-factor test). See RFJN, Exh. H (citing Estes v. Monroe, 120 Cal. App. 4th 1347 (2004); Mier v. Owens, 57 F.3d 747 (9th Cir. 1995); Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971)). Although there does not appear to be binding authority holding that a finding of non-justiciability under Feres constitutes a decision on the merits, see Terrell v. United States, 7 Cl. Ct.

171 (Cl. Ct. 1984) (finding plaintiff's constitutional and statutory claims were resolved on the merits and barred by res judicata where first court had held that claims were barred under Feres), the Court finds that the Superior Court reached the substance of Plaintiff's claims and made a final determination. Therefore, insofar as Plaintiff's claims rest on the cause of action litigated in Sacramento Superior Court—revoked approval of the interstate transfer—they are barred by res judicata and cannot be further litigated in this Court.

2. Substantive Due Process—Occupational Liberty

In the Ninth Circuit, a plaintiff can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis. Engquist v. Oregon Dept. of Agric., 478 F.3d 985, 997 (9th Cir. 2007). However, nearly all of the Ninth Circuit cases recognizing this right have dealt with legislation or regulation and not review of government employer decisions, which is more restrained. Id. When it comes to a public employer's violation of occupational liberty, the Circuit "limit[s] the claim to extreme cases, such as a 'government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.'" Id. at 997–998 (quoting Olivieri v. Rodriguez, 122 F.3d 406, 408 (7th Cir. 1997)). This is because "[s]uch a governmental act would threaten the same right as a legislative action that effectively banned a person

from a profession, and thus calls for the same level of constitutional protection." Id. at 998. On the question of how much interference constitutes a denial, the Ninth Circuit adopted the Seventh Circuit's standard:

> [A] plaintiff must show that the "character and circumstances of a public employer's stigmatizing conduct or statements are such as to have destroyed an employee's freedom to take advantage of other employment opportunities." "It is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions make it virtually impossible for the employee to find new employment in his chosen field."

Id. at 998 (quoting Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 531 (7th Cir. 2000)). "[S]ubstantive due process protects the right to pursue an entire profession, not the right to pursue a particular job." Id.

Plaintiff alleges that Defendant Baldwin's separation order, removing Plaintiff from the Army National Guard and causing his involuntary separation from the Special Reserves, "blacklisted plaintiff, jeopardizing his ability to obtain approval by the National Guard Bureau and/or Secretary of the Army for extension of his mandatory retirement date." FAC ¶ 66. Plaintiff alleges that the order carries "the distinct appearance within plaintiff's chain of command that he committed some form of misconduct warranting" the order. Id.

Accepting as true Plaintiff's contention that the separation order created adverse opinions about Plaintiff (despite the fact that the order lists Plaintiff's separation as "Honorable," see FAC, Exh G), the alleged harm to Plaintiff's employment opportunities is limited to assignments with the National Guard

Bureau and the National Guards of the states.  He has not alleged facts that could show it is virtually impossible for him to find new employment in his chosen field or pursue an entire profession; the only restriction is further opportunity with a particular employer.  Although employment opportunities within a branch of the military could conceivably constitute a "profession," the Court declines to construe the occupational liberty analysis in this manner.  Clear authority instructs that there is no constitutional right or property interest in continued employment in the military or National Guard.  See, e.g., Navas v. Vales, 752 F.2d 765, 768 (1st Cir. 1985) (no constitutionally protected property interest in continued employment in the Guard).  Though framed as a liberty, rather than property, interest, it would run counter to this established precedent to find that substantive due process protects a plaintiff's interest in pursuing military employment.

Appearing to concede that he cannot rely on continuing employment in the military in support of this claim, Plaintiff argues he has a constitutionally protected right to obtain civilian employment while he is otherwise qualified to do so as an officer in the military.  Opp'n at 8.  As Defendants argue, Plaintiff's inability to secure a job as a civilian technician with the Arizona National Guard does not constitute exclusion from a profession.  To the extent Plaintiff alleges he is being denied access to all civilian employment with the National Guard, Plaintiff fails to explain how the separation order has deprived him of these opportunities *apart from* limiting his continued employment with the National Guard.  His alleged difficulty in

pursuing post-active duty civilian employment stems from the separation order's interference with his extended military career. The Court's analysis with respect to Plaintiff's continued employment in the National Guard extends to his civilian employment with the same employer. Cf. Tennessee v. Dunlap, 426 U.S. 312 (1976) (finding that the property interest the National Guard Technicians Act created in continued civilian employment is confined to the guardsman's term of enlistment). The Fifth Circuit's opinion in NeSmith v. Fulton does not dictate or counsel otherwise. 615 F.2d 196 (5th Cir. 1980) (finding the plaintiff stated a due process claim where he was dismissed from his civilian technician position before he was terminated from the Georgia Air National Guard; holding the decision was unreviewable). Plaintiff's substantive due process claim based on occupational liberty is dismissed.

3. Civil Rights—section 1983

Plaintiff's claim under 42 U.S.C. § 1983 is predicated, in part, on his other constitutional claims. As Plaintiff has abandoned his equal protection claim and stigma plus claim, and the Court has dismissed Plaintiff's occupational liberty claim, the section 1983 claim is dismissed insofar as it relies on these constitutional theories.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Other than the constitutional claims, the only federal law Plaintiff cites as being violated is

10 U.S.C. § 12683. FAC ¶ 45. In his Opposition, Plaintiff argues that his "claim that the illegal separation order violated provisions of federal law, as implemented through Army regulations, establishes a basis for recovery of damages under section 1983." Opp'n at 9.

Section 12683 of Title 10 restricts involuntary separation of reserve officers. "An officer of a reserve component who has at least five years of service as a commissioned officer may not be separated from that component without his consent except (1) under an approved recommendation of a board of officers convened by an authority designated by the Secretary concerned; or (2) by the approved sentence of a court-martial." 10 U.S.C. § 12683 (a). However, the sub-section does not apply to transfers under section 12213. 10 U.S.C. § 12683(b)(3). Section 12213(b) provides:

> Unless discharged from his appointment as a Reserve, an officer of the Army National Guard of the United States whose Federal recognition as a member of the Army National Guard is withdrawn becomes a member of the Army Reserve. An officer who so becomes a member of the Army Reserve ceases to be a member of the Army National Guard of the United States.

Defendants argue that the transfer was executed in compliance with this section and thus no federal law has been violated.

Plaintiff sought to have his state commission vacated under California Military and Veterans Code section 232 because he had become a citizen of the state of Virginia. See ECF No. 7. After Plaintiff filed the Complaint in this matter, Defendant Baldwin vacated Plaintiff's commission in accordance with that section. FAC, Exh. E. Under National Guard Regulation 635-100, the termination of an officer's appointment in the Army National

13

Guard is a function of the State and the withdrawal of Federal recognition of an officer is a function of the Chief, National Guard Bureau, acting for the Secretary of the Army. See RFJN, Exh. H at ¶ 2. An Army National Guard officer should be terminated from his state appointment in accordance with State laws or regulations (or for one of the other twenty-five enumerated reasons), such as California Military and Veterans Code section 232. Id. at ¶ 5a. The regulation further provides that Federal recognition of an officer in the Army National Guard will be withdrawn by the Chief, National Guard Bureau for, *inter alia*, separation or discharge from the State appointment as an officer of the Army National Guard. Id. at ¶ 5b. Under paragraph 7, an officer of the Army National Guard becomes a member of the Army Reserve when Federal recognition is withdrawn. Id. at ¶ 7a. "Upon separation from the Army National Guard (ARNG), State orders will specify the USAR unit or the control group in AR 140-10 to which the officer is to be assigned." Id. at ¶ 7d.

There is no basis for the Court to conclude Defendants violated the law in issuing the separation order. First, the declaration Plaintiff cites in support of his opposition is not before the Court on this motion. Second, although Plaintiff contends Defendant Baldwin lacked authority to execute the separation order in the manner he did, Plaintiff's Complaint fails to controvert the propriety of the actions taken. Defendant Baldwin's actions comply with the steps required by the regulation quoted above. Most importantly, Plaintiff failed to allege that he is a member of the "Selected Reserves," a fact

14

upon which his entire argument is based. See Opp'n at 5 n.1; 6-7. Plaintiff cannot defeat a motion to dismiss by relying on facts Plaintiff failed to plead and are not subject to judicial notice.

Furthermore, National Guard Regulation 635-100 reflects that withdrawal of Federal recognition is a function of the National Guard Bureau, not the state. Thus, Plaintiff has not sufficiently explained how Defendant Baldwin's order directly effectuated the loss. Based on the pleadings, the cited federal statutes, and the judicially noticed regulation, the Court finds Plaintiff has failed to state a claim.

### 4. Leave to Amend

Plaintiff requests leave to amend his complaint should the the Court grant the motion to dismiss in whole or in part. While leave to amend should be freely given, it should be denied where amendment would be futile. Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1049-50 (9th Cir. 2006).

Plaintiff appears to concede that he cannot seek damages against Defendant Baldwin in his official capacity or against the California Military Department due to sovereign immunity. See Opp'n at 12 ("Defendants argue that damage claims against Defendant Baldwin are barred by principles of sovereign immunity . . . . None of these immunities preclude the right of plaintiff to recover damages against Defendant Baldwin in his individual capacity, acting under color of law."). Amendment on the damages claims against Defendant Baldwin in his official capacity and the California Military Department is thus futile and leave to amend is denied.

15

As to the damages claim against Defendant Baldwin individually and for injunctive relief more generally, Plaintiff is granted leave to amend his 42 U.S.C. § 1983 claim insofar as it relates to the March 2017 separation order, only. Plaintiff is denied leave to amend his first, second, and fifth claims, which he abandoned. Plaintiff is denied leave to amend his third claim relating to occupational liberty because Plaintiff has not pointed to any facts showing amendment could cure the deficiencies. As to the § 1983 claim based on the illegal order, it is not clear to the Court that amendment would be futile, given Plaintiff's citations to documents not before the Court and repeated assertions—though insufficiently supported at this time—that Defendant Baldwin lacked authority over him to issue the order and that different procedures had to be followed because he was a member of the Selected Reserve. Leave to amend is granted as to this claim. While the Court need not, at this time, decide whether the <u>Feres</u> doctrine and qualified immunity bar Plaintiff's damages claims against Defendant Baldwin in his individual capacity, Plaintiff should consider the impact of these doctrines, as well as mootness concerns, in deciding whether or not to file a Second Amended Complaint.

### III. ORDER

For the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss, with leave to amend as described and limited above. If Plaintiff decides to file an amended

///

///

///

complaint he should do so within twenty days of the date of this Order. Defendants' responsive pleading should be filed within twenty days thereafter.

IT IS SO ORDERED.

Dated: December 6, 2017

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE